Case number 18-704, D.L. et al. of Pellis v. District of Columbia, A Municipal Corporation et al. Ms. Pavlik for D.L. Pellis, Ms. Pittman for Athlete District of Columbia, and Ms. Carver for A.D. East Carolina, United States of America. Good afternoon, well, good morning, your honors. May it please report, Carolyn Pravlick for the Plaintiff Class. Since there is no dispute that this class action is complex federal litigation, and that the forum is D.C., the district court was required to award fees based on the prevailing market rates in D.C. for complex federal litigation. I question both sides of this proposition. The first one is that it has to be in D.C. I've never had this question exactly before, but I've seen market studies in a lot of antitrust cases where I don't think you could limit the market to D.C. if you're doing it for an antitrust, we certainly would say that at least the easily accessible surrounding areas in Virginia, Maryland, perhaps in West Virginia, could be considered. I don't see why that wouldn't be the case here as well. This court held in the Donovan case that the forum is what represents the applicable market. This is a facts question, isn't it? I don't think so, your honor. If it is, the facts here don't jibe with what is needed. I'm reading from your brief, partly quoting from Ely. It is part, your honor. The misapplication of the principle is that the rates must be from the forum based on the Donovan case. Factually, there is no evidence here that the If it's a factual question, could we have been making a rule of law in Donovan? Or was that simply a case-specific affirmation of the district court's determination? I think it created a rule of law for this forum. I thought the question here is purely one of reading the text of the statute, which makes it legal. It says, prevailing in the community in which the action or proceeding arose. That is correct. And Donnell, we interpreted that as meaning where the district court sits. Yes. That seems like a legal question, not a fact question. It is. Factually, I was going to the data that was in the U.S. Attorney's new ALN matrix. That goes to the question of whether those rates reflect what's happening in the District of Columbia. Yes. That might be a fact question, but the meaning of the words in the statute are the meaning of the words in the statute. Yes, they are, your honor. Second question on your proposition. As far as the category of attorneys capable of handling complex litigation, I think, again, in your brief, you referred to a prior parallel case and referred to the attorneys in that case as, I forget if you said regulatory lawyers or administrative lawyers from Steptoe and Johnson. That was a case in which they got a very good result, got awarded fees. Why do we have to limit the market to those attorneys who hold themselves out as being capable of handling complex federal litigation, as opposed to the practicing bar from whom clients, given a free choice, might choose lawyers? The Blackman case to which you refer, the court held that that was complex federal litigation and was awarding the rates for complex federal litigation. Now, what the court decided was that those particular lawyers, their skill set didn't arise to the level of other complex federal litigators. There's no question here about the skill set of a plaintiff's counsel that would say that the rates should be lowered to make that adjustment. That's just not an issue here. Can I, again, I hate to be a stickler about the statutory text, but it says for the kind and quality of services furnished. So if the services being furnished are a simple will, the rates would be different than, presumptively, for a class action, a complicated class action. People charge different amounts. Now, sometimes it's the same person, but most likely it's different people. People who handle simple wills charge maybe a fixed and relatively modest fee or a relatively modest per hour fee. People who deal with complex class actions charge higher rates. Isn't that the question here? Yes, Your Honor, that is a big part of the question because the district court skipped over that evaluation. It didn't determine whether or not the district met its burden under Covington of coming forward with specific evidence. Now, Covington requires that, quote, when the government attempts to rebut the case for a requested rate, it must do so by equally specific countervailing evidence. The district did offer evidence here, but its evidence just was not sufficient. The evidence must be relevant to the market, and the district's isn't. The district represented the U.S. Attorney's ALM matrix. However, that matrix is not equally specific countervailing evidence, demonstrating that the rates for complex federal litigation in D.C. are less than the rates in the LSI Laffey matrix requested by plaintiffs. The U.S. Attorney's new ALM matrix provides neither. Excuse me. You just confused me. Isn't the question whether the new U.S. Attorney matrix is a proper basis for a fee here, right? Or are you still arguing that the old Laffey rates should have been accepted by the district court? We're arguing that the LSI Laffey matrix rates should have been accepted by the district court because the plaintiffs met their burden of proof. Well, but the district court, there was a, the district court concluded that, look, they're decades old now, right? They're not as refined as other rates could be. And it's all abuse of discretion. I mean, I understand your argument. I completely understand your argument, not saying I agree with it, but I understand your argument about the new U.S. Attorney matrix, about the defects in that. But it's hard for me to see why, what the basis is for concluding that the district court abused its discretion in deciding, after all these years, not to use the old Laffey rates anymore. That's all. I don't get the, I understand you don't like them, but what's the basis for an abuse of discretion? The district court gave a bunch of reasons for concluding that they were no longer acceptable. They were old. They weren't sufficiently refined. Let's look at each of those reasons. The age of the data, the fact that the district argues that that new ALM matrix was based on data gathered in a more reliable manner and is set forth in more graduated experience levels. None of those factors demonstrate that those rates reflect the prevailing market rates for complex federal litigation. You mean the U.S. Attorney's Office matrix. I understand that argument. I get that. I'm asking you for an explanation of why the district court abused its discretion in not using the old Laffey matrix. That's all. In not using the U.S. Attorney's Laffey matrix? Can we just, to get the words straight here, let me propose words, okay, because we've got so many different matrices here. You guys like the LSI Laffey matrix. Yes. And the government likes the USAO ALM matrix. Okay? I'm seeing nodding from the government side. Yes. Can we use those words because there are so many different variations on these things, but you are asking that the LSI Laffey matrix be the one. Right. That's correct. And I'm asking you, what's the basis for concluding that the district judge's decision, you agree it's abusive discretion, correct? We agree it's abusive discretion. So why is that an abusive discretion? Because the district court was charged with awarding rates for D.C. and for complex federal litigation, and the USAO ALM matrix represents neither of those things. No, but you're, it can't be that the district court abused its discretion in rejecting the Laffey, the LS, what do you want to call it? LSI Laffey matrix. I don't actually think your letters helped a whole lot, but that's okay. What do you want me to call it, LSI Laffey? I'm sorry, Your Honor. The LSI Laffey matrix does come from us. Okay. All right. Let me just ask you maybe a format question, okay? We have two questions before us. Number one, did the district court abuse its discretion in accepting the rates you propose, right? And if the district court did not, right, then did the district court abuse its discretion in accepting the government's rates? Those are two separate issues, aren't they? They could be, yes. Well, what do you mean they could be? Tell me why they're not. The presumption applied automatically to the LSI Laffey matrix rates. There's been no doubt that they applied to complex federal litigation in D.C. The district court tried to apply that same presumption to the USAO ALN matrix and in the process jumped over the whole analysis of whether or not that matrix satisfied what he was supposed to be doing in the first place. He's supposed to be selecting the community rates for similar work in the community. And he jumps to, as an abuse of discretion here, because he misapplies legal principles, he jumps to this new ALN matrix without putting the district to its burden of showing that that matrix reflected the rates for complex federal litigation in D.C. Your argument is you came in with the plaintiff's matrix, the LSI Laffey matrix, which this court had accepted in Salazar, Reed, and Covington, but most recently in Salazar, as an acceptable, at least sufficient for presumption, right? Yes. So you have a presumptive matrix. They then came in in response with data that is not relevant. Yes. Is that your argument? With irrelevant data. Just as good as if they had said, here are the rates lawyers in Hawaii charge for wills. Yes. And you would say that's not good enough to overcome the presumption. That's right. Of course, the facts are not quite like that, but that's the legal argument you're making. That is the argument we're making, that they did not come forward with equally specific, countervailing evidence as required under Covington to show that the LSI Laffey matrix rates, the ones plaintiffs requested, don't reflect the market for complex federal litigation. And at the same time, they did not offer evidence to show that the USAO ALM matrix rates represented rates for complex federal litigation. Well, if you're right about the first point, we'll get to the second point, right? Is that right? Yes. That's why I keep asking, aren't there two separate questions? If you're right that the district didn't sustain its burden of showing that there was anything wrong with the old Laffey rates, then that's the end of the case. Yes, that is the end of the case, Your Honor. Right? That's the reason for this Court's reversal of what the district court did, and to remand it back for instructions to calculate using the fees using the other. But shouldn't the lawyer, I mean, just stepping back for a minute, it just seems to me, and I'm not saying this is my view, but isn't it a perfectly legitimate question to ask whether the Laffey rates are based on rates that are how old now, like 40 years? 40 years old? They date from 1989. 1989, okay. So don't you think it's perfectly logical to get to the point where we would say, look, you know, for a decade or two, using those rates was fine. We could adjust them with inflation, take it into account. But eventually, you know, the inflation factor is the constant adjustment through inflation will distort, will get us further and further away from what are, in fact, the rates for complex litigation in the District of Columbia. So let's come up with a new system. Let's not use the old rates anymore. Let's come up with one that's updated. Your Honor, that old system is cross-checked against the market data that plaintiffs offered. So even though it's a little bit older data and it's being adjusted through an inflation index, what plaintiffs have done is they've come forward with an enormous amount of market data to demonstrate that the rates, the adjusted rates, still reflect the marketplace. In fact, they're slightly below. This may not be decisive in this case. But what I don't understand is, given all the effort that the plaintiffs went through here, and the fact that there are lots of plaintiffs like you in other federal complex litigation, why don't you just hire a graduate student in statistics who can do either take from ALM a non-custom survey, a survey of everything, or survey all the law firms in the District of Columbia, and come up with a new matrix? It just doesn't sound that hard. This is like building one piece of old software on top of another piece of old software on top of another until the whole system breaks. Why don't you just do this? Your Honor, because it would be a pretty expensive proposition. That's why I don't follow. Given everything. The $10 million fee you're asking for, that would be an expensive proposition? Did I understand you correctly on that item? I don't understand why is this expensive. You get a pro bono computer scientist, just like there are pro bono lawyers. There aren't that many law firms in the District of Columbia. And you do a survey of the rates they charge. I don't understand why this is expensive. It requires, number one, that that pro bono student is able to get the lawyers in the District to reveal their rates. You just told us that you cross-checked the Laffey rates. We did cross-check. How did you get those rates? We cross-checked with public statements that lawyers made with regard to their rates. We did not canvass the entire complex federal litigation bar to find out their rates. That would have been a good idea. That doesn't sound like a particularly reliable cross-check. I mean, a couple of random public comments. Remember, we're talking about abuse of discretion here. The district court abused its discretion in accepting and rejecting it, There is no evidence put forward by the district that shows that the USAO ALN matrix reflects the market rates for complex federal litigation in D.C. I'm sorry, there's no evidence what? There's no evidence that the USAO's ALN matrix. I know that. I know that's your argument. But that's the second issue. The first issue is, did the district court abuse its discretion in rejecting the Laffey? The second one, and I was about to ask you to focus on that, because it seems to me you can prevail either by showing, even if you can't show that the district court abused its discretion in rejecting the Laffey rates, you have a separate argument, right? That the evidence behind the new defendants, we're going to call them defendants rates, that there's an inadequate evidentiary base for that in terms of what the statute requires. That is, prevailing rates for complex litigation in the District of Columbia, right? Yes. That's a separate argument. But it's also. And if you're right about that, it's got to go back, right? It's also the district court abused its discretion because when it was supposed to be looking at complex federal litigation rates for D.C., it just jumped without analyzing whether or not the district had met its burden with regard to its new matrix. That's an error that the district court made. Well, that's why I just asked you that question. Why don't you focus on that? What do you see as the primary in the defendant's matrix that the district court accepted? The primary defects are, number one, it doesn't relate to complex federal litigation in D.C. It is based on a survey that collected data on all legal services, particularly non-litigation services like wills and bankruptcy and real estate closings. And it's not specific to D.C. Now, looking at the underlying survey's data allows us to see that there's a marked difference between the rates in D.C. and those in Maryland and Virginia. The data in the ALM survey. When we say Maryland and Virginia, so are we talking about lawyers practicing in Maryland or living in Maryland and practicing? I think we're talking about lawyers who the lawyers you're worried about are the ones who are in Maryland and practicing in Maryland, right? It's not clear from the ALM matrix where those lawyers might go in terms of their practicing, but they are definitely located in those other states. And the ALM survey breaks out the rates for D.C., Maryland, and Virginia. And if we look at those rates, the rates for Maryland and Virginia are substantially lower than the rates for D.C. I know, but there are law firms, very high-priced law firms in the D.C. metropolitan area that have their offices in Montgomery County, in Chevy Chase, Bethesda. Also in Fairfax County. There's no indication that any of those lawyers are captured in this survey for work that they're doing that might be complex federal litigation. If we look at it across the board, at joint appendix pages 1489, 1492, and 1497, we see that the D.C. rates are substantially higher than the rates broken out for Maryland and Virginia. Okay, suppose, let me just ask you a hypothetical. I understand what you're looking for. What you want, and I guess what the statute requires, I'm going to state it as a question. Suppose you had a survey of lawyers handling complex litigation in the district. And by those I mean all lawyers, whether their offices are in the district or in Bethesda or Fairfax. But lawyers handling complex litigation in those jurisdictions. And we came up and the survey had a rate for them. That's what you're looking for, right? Yes. It wouldn't be defective just because a couple of the firms that were surveyed happened to have their offices in the near-in suburbs. Your complaint, as I understand it, is that it looks like from what, and I'm just taking this from your brief, that a lot of the lawyers surveyed here could have been from rural Maryland and rural Virginia, correct? That's correct. And doing no complex litigation at all, right? Correct. That's your concern. Correct. There's no indication that we're looking at the close-in suburbs of lawyers who are coming into D.C. to do complex federal litigation. And is your second complaint that this isn't just complex litigation? Their data is based on all work. Absolutely. It's predominantly, if we look at the area from which the four-state area represented in the USAO ALM matrix comes from, it's part of the South Atlantic region in the ALM survey. The data for the South Atlantic region comes mostly from firms identified as general law. And only seven of the firms in the whole region are identified as litigation firms, with five of those firms being insurance defense litigators. There's no evidence that we have rates for the similar type of work that's at issue here. And Plaintiffs came forward with lots of evidence to demonstrate that the LSI laughing matrix was in line with the marketplace. You do reference in your brief the use of collected fees as opposed to stated fees. Why would it be in the use of discretion for judges to consider collected fees as opposed to stated fees? We did offer evidence of rates received by the lawyers who were involved. All of that data appears on page 49 of our opening brief. But the idea of collected rates or charged rates, actual rates, is a question of whether or not there's a discount with regard to the rates. And we demonstrated that the LSI laughing matrix rates do include a discount because they're approximately 10% below the market evidence that we put forward. So they come in below. So what you're saying is that's already built in, but I'm still wondering why it was an abuse of discretion for the judge to consider the rates as collected. No, it's not an abuse to consider that factor. It's an abuse by not factoring in the evidence that Plaintiffs put forward to demonstrate that they were offering evidence that showed rates charged and that rates that were discounted. Plaintiffs put in a lot of evidence from complex federal litigators that testified as to their rates and their rates were comparable to or above the LSI laughing matrix. The district didn't come forward with any evidence from complex federal litigators to show that the new ALM matrix reflected the rates for complex federal litigation in D.C. Should I continue? No, we're 10 minutes over. All right, thank you. Good morning. May it please the Court, I'm Lucy Pittman on behalf of the District of Columbia Government. I'm going to start by answering Judge Tatel's two questions. Was it an abuse of discretion for the District Court to reject the LSI matrix rates? No, it was not. The District Court identified a number of serious problems with the LSI matrix rates, as well as the market data that the Plaintiffs put forth to try to support those rates as being reflective of the community and prevailing market rates. The second question, was it an abuse of discretion for the District Court to accept the USAO matrix rates? No, it was not. Again, the District Court identified a number of significant positives about the USAO matrix being superior to the LSI matrix, and I'll highlight three of them now. One, it's based on more recent data, and exactly as we just heard, the data from the LSI matrix is 30 years old. To the extent that there are any forecasting errors in that data, those errors get compounded each year that the inflation index is applied to it. Whereas the USAO matrix-based data is now based on data from 2011. Okay, so that's right. But the question is, is it the right data? Sure. And we've heard a lot about the fact that the data is based upon a statistically significant survey. The goal here was to have a large enough sample size. What if you had a statistic that doesn't help you? Go ahead. Well, we could say the same thing. We sat together for a long time. What if you had a brand new statistically significant data of law firms in Hawaii? Yeah, that was my question. That's right. That's right, and I'm sorry. My lead-in question was, my lead-in, I wasn't getting to the point fast enough, which is that this survey surveyed the D.C. metropolitan area. It included the District of Columbia. It would have included the close-in suburbs. Well, but it also included the far-out suburbs. Based on what I see, it included all of Maryland, all of Virginia, maybe even West Virginia, doesn't it? Yeah, it does include sort of the census for state area. What do you mean the sort of? This is, I mean, you can't get around the statute by using words like sort of. It says, it says, it says the rates must be prevailing in the community in which the action or procedure is. That's not rural Maryland and rural Virginia. And there's no, it's impossible to tell from this data what percentage. You can't even tell. Maybe you can. I mean, you know, if 95 percent of the lawyers who were surveyed in the U.S.A., in the governments were from the District of Columbia or the near-in suburbs, then you might have a case, but I can't tell that. Sure, so there's two points I want to make on this. One is, by having a large sample size, to the extent that there are these low outliers on the low end, as well as outliers on the high end, those sort of when you get an average, then you don't have a rate that is skewed too high or too low. That's not the way the statute looks. The statute is looking for rates for a particular kind of litigation in Washington, complex litigation. It can't be that, and complex litigation, we know from all the evidence in both this case and other cases, is expensive litigation. So it can't be that by including, you know, huge numbers of, A, lawyers who are not in the district, and, B, legal work that's not only not complex but not litigation, that that could conceivably average out to something that's useful to us. Which brings me to point two. Am I wrong about that? Well, it brings me to point two. No, no, no. Don't go to point two without resolving point one. But it's exactly responsive to that, which is that a matrix is a starting point. So you also have to have evidence of what is the community prevailing market rate so that you can do comparators. And I disagree with the plaintiffs that the district didn't produce that evidence. The district produced evidence of comparable, complex federal litigation, specifically class actions in institutional reform cases, exactly like this case. You couldn't get something closer. But that's not statistical. That doesn't do any of the things that you just said. Right. No, those are then comparators. So should we just throw out completely the USA ALM matrix and just look at your comparators? No. I read this Court's cases on using the matrices and the supplemental evidence, is that you need both to go hand in hand. Well, if that's the case, just to push further on the points that Judge Tatel has already begun, I have in my hands the census district that we're talking about. And this is what, allegedly, the report comes from. Now, do you think that lawyers in Centerville, Manassas, and Ashburn, charging for simple wills charge the same amount, either collected or billed, as the large law firms in Washington charge for complex class actions? I don't know. Oh, come on. Come on. I find it unlikely. What's your best guess? I find it unlikely that they would. I agree with that premise. In that case, they should not be part of the universe at all. We can't say they're outliers. They're not outliers. They're outside of the universe. Right. So if you have a data set that intentionally includes rates that are neither complex nor District of Columbia, I don't understand how we can give any weight at all to that data set. Now, maybe we can move on to the few, relatively few examples you have about settlements, about agreed, which have their own problems. But you don't have a matrix at all. That's the problem here. I would disagree with that because the matrix also includes data on the high end. And so it also includes bankruptcy rates, which tend to be higher than complex. You don't get a statistically correct by taking wrong numbers on one side and wrong numbers on the other and hope that just randomly or by accident they average out to something useful. You would agree that wills in Centerville are not either, to use the statutory language, rates prevailing in the community in which the action is proceeding, that is the District of Columbia, or for the kind and quality of services furnished. You would agree with that, right? Yes. And the same for DUIs and the same for divorces and the same for real estate closings, right? I would agree with that. And do you know how many of the statistical points in this survey fall in those categories? We do not. But I would like to also point out that we also don't know the same type of information about the LSI laughing matrix. That's a different issue. We've got two different issues here. Issue one, I've said it three times, I'll say it one more time because I think you'll agree, issue one is whether the court abuses discretion in rejecting the plaintiffs, right? That's right. Okay. And you may well be right that he didn't. But at least that rate, that matrix is based on complex litigation. That doesn't help you with respect to the defendant's matrix. The defendant's matrix is unacceptable under the statute unless it's based on complex litigation in the District of Columbia. Do you agree with that? I mean, unless it measures that. That's the point. I mean, I think that's the point. So the data itself, no data is ever going to serve a purpose until you actually test it and do comparators. And I think that that's what's key here about the USAO matrix is that Dr. Malloween didn't just take this data, make sure it was statistically significant, make sure that it was reliable, but she also then took the step further of doing comparators to see if this would be. Okay, like one of the comparators was comparing it to national rates, right? That's right. Top 10 percent? That's right. Does she have any idea whether the top 10 percent has any relationship to the fees charged for complex litigation in the District of Columbia? No. Nothing. No. Same thing with bankruptcy rates, right? Those were her checks. And the other point about this is you wouldn't need to make those kinds of checks. Well, let me step back. I understand why the government wants to update the Laffey matrix. It's 40 years old. It makes sense. Let's try to update it. But if you're going to update it, it still has to be updated in a manner that's consistent with the statute. And so your expert would not have needed to make these checks against the top 10 percent of national rates or bankruptcy rates and therefore run into the problem of not knowing whether those are comparable. If the expert had simply surveyed the rates charged for complex litigation in the District of Columbia in the year 2017, that's the question. Why make it so difficult? Well, I can't answer that question. What I can say is we don't have that in front of us, unfortunately, Judge Tatum. We don't what? We don't have that access to that data in front of us, unfortunately. You mean today? That's right. Well, I don't know whether that's true. American lawyers seem to have rates for what everybody charges. I mean, is that true? There's no way to get these rates? I don't know. On this record, neither expert indicated that that was possible. Okay, but the only question we have to ask, right, is whether – I mean, it may be that there's problems in getting the rates, in which case I would expect the evidence in the record to say that, to have affidavits which says, you know, it would be really perfect if we could get the actual rates charged for complex litigation in the District of Columbia. But we can't get that, so here is second best. But second best here includes huge amounts of work that is not only not complex litigation, it's not litigation, and it includes lawyers in all the towns that Chief Judge Garland mentioned. So I get why you're trying to fix the problem. It's just that I don't see that this fix matches what the statute requires. Well, if I can go back to your first question, because I'm not 100 percent sure I've answered it adequately, which is, was it an abusive discretion for the district court to reject the LSI matrix rates? Certainly on this record, it is not an abusive discretion. The district court has specific findings on why that matrix was inferior. And what are those? The fact that it is old data. I got that. But it's updated regularly with inflation factors, and they did double-check it against whatever current rates they could find and found that was accurate. Right, well, and so if you'd like, I can jump to the market data and double-checking. The market data, the district court, again, not an abusive discretion, found that market data wasn't helpful, and for good reason. It was contrary to this court's decisions and concerned veterans and Covington and Ely, because it wasn't the actual fee that someone received. It was the fee application. What is the evidence that the data in the USAO ALM matrix was actually received as compared to billed? In the USAO matrix, it was actual billing rates, which is my understanding is the standard billing rates, which may not have been what was received. Right, so you have exactly the same problem as the plaintiffs. I would disagree, because one is the matrix rate and one is the market data, and I do view these things as being different. I'm asking the question whether we have to begin with this understanding that the matrix rates go completely out. And if your argument about the plaintiffs' rates is that they are billed and not received, and your matrix is billed and not received, then we have to throw your matrix out completely. And the district court didn't do that. The district court only complained about the plaintiffs' matrix as not being received. No, the district court complained that the market data that they produced to support their matrix was billed and not received. The actual matrix, the LSI matrix, we don't know what that data is built on. We don't know if that was built on received or billed. And you don't know, but you know that the matrix you're resting on was billed. I believe that's right, based upon the language of the standard billing rate. And Judge Walton in the district court indicated that at most that's a flaw, indicating that the USAO matrix would be higher than the prevailing rate, not lower. But I will say the market evidence specifically, so these are the fee applications that were submitted that create Joint Appendix 739, the table that they tout as being the market evidence to support the matrix, that's contrary to what this court has said you have to produce as market evidence. You say because that's amount received, not amount billed. That's right. Concerned Veterans explicitly states that the data about a fee award in other cases helps ensure that there is comparable treatment in like cases within the district. My problem here is the burden shifting standard that this court set up. We say first the plaintiffs have to meet, come up with presumptive evidence. They did exactly what they did in Salazar, and we said that was enough. So that's virtually a ruling of law that it's sufficient for the presumption. Now it's your burden to come up with something else, and you come up with a matrix that has the same problem that you allege about the plaintiffs, namely it's billed and not received. And it has no evidence that it refers either to complex cases or this market. Well, when that happens, you're stuck with the presumption unless you can beat the presumption. So under those circumstances, it's an abuse of discretion to reject the presumptive matrix. Why is that wrong? I don't read Salazar as creating a presumption in favor of the outside agency. It accepted the presumption in that case. It did, but it also noted that the district did not rebut. The two matrices at issue in that case were different. The arguments were different. It was about an inflation index. No, no, I understand. But, of course, it's not the only case in which we've accepted that matrix. The question is whether you have any evidence to the contrary. And when you come up with no matrix, all you have is, I mean, what's the total number of market data points that you have that are not from the matrix? I believe there's 8 to 10 cases that are included. But, quite frankly, plaintiff's market data also supports it. When you actually look at what the fees were awarded, at page 29 of their reply brief, they had to concede that once you look at fees awarded in their market data, it's actually more comparable to the USAO matrix market than to the LSI market. They have various reasons as to why you should disregard those fees awarded, but I think Concerned Citizens says otherwise, that that's what you're supposed to look at, and that is the evidence that you put forth to establish whether or not a particular matrix is going to be used going forward in a particular case. Are there further questions from the bench? No. Thank you. Thank you. May it please the Court. Charles Scarborough for the United States and Zambia Security, supporting the district. There's a growing consensus in the district courts that the USAO matrix best reflects prevailing market rates in the D.C. area for complex litigation. The 28-J letter that the district submitted on Friday in Lewis goes through a lot of the analysis of that. I think the Court's concerns, I take the Court's concerns with our matrix. It is not perfect. There is no doubt that that is the case. It is a reasonable effort to update. Primarily the concern was that the Laffey rates were very, very old. They were 30 years old. Right, but okay, you say it's not perfect. Right, but can you tell us, I just have two questions about the data here. Can you tell us where the geographic data here comes from? Are we right that it's the whole metropolitan area? It's the D.C. metropolitan area as used by the census. Yeah. And again, so that. And you believe that complies with the statute's requirement that it be based on the. Well, I think when you go into what the census considers in putting together a geographic area, it has to do with whether the people, you know, a substantial number of those people work in practice. They go into the metropolitan area. Well, isn't the question whether a substantial number of those people work in practice in complex litigation? Well, complex litigation is a separate point. No, no, no. I'd like to address that. I don't think it's a separate point. It's not a separate point. Your census would, it has to be complex litigation in the District of Columbia. So the census would be helpful if the definition of the metropolitan area were we're including all people in the metropolitan area who do complex litigation in the District of Columbia. Then you'd have a case. I understand. But if you have people, if you have people who live out in, what was one of the names of those places you mentioned? It was not Hawaii. No. You know, way out in the rural Maryland who come into the city because they're accountants. That doesn't tell you anything about the statutory question. We know that they're lawyers and so it's. Well, they're lawyers who do will and estate work. That doesn't tell you anything about the question. I understand, Your Honor. And part of the problem here that I wanted to. But I just need you to explain to me how you can defend this matrix in view of the requirements of the statute. So part of the defense is that there is no established body of survey material. Maybe there should be. Maybe the government should do a survey that's more neatly tailored to try to get at complex federal litigation. What the government tried to do was use existing data to update things. And to the point about the census, again, this is the same D.C. metropolitan area that the GS pay scale comes from. It's the same. It's recognized as a unit of people that come into this community. And that's what the statute requires. It's a community-based thing. Go ahead. We've got two matrices. We've got the old. There's no question that that is based on complex litigation in the District of Columbia. Now, there may be problems. It's all right. But at least it's responsive to the statutory definition. And we've got the government's new version, which is brand new. It's much more up to date. No question about it. But the question is, is the data relevant? And with these two choices before the court, which one is it required to accept? I don't understand why. You haven't made the case, at least, why with a matrix that is focused on complex litigation in the district and one that isn't, why is it not? Can I address that very briefly? Yes, please. Because as to the Jablonski Declaration, which is the basis for the LSI matrix, the 1989 matrix, and those numbers, there is no indication in that five-page declaration that it is, in fact, based on complex federal litigation. It doesn't actually say that. There's very little there, too. But part of the reason why this court blessed that to the extent you can say that in Salazar was that there was no competing evidence really offered there. This is an effort, you know, the new USAO matrix didn't exist in Salazar. It wasn't a competing thing that was a part, you know, in play. To address the complex federal litigation point, I think part of the problem is it's difficult to define what is complex federal litigation. As the Reid decision, the most recent decision. We have quite a few cases that do that. Title VII, 88, there's about six or seven. Well, I would point to the Reid decision in which they said that Judge Edwards, writing for the court and you dissenting, said that, you know,  Correct. And you can't use those. Well, I understand. But to the extent you're casting a wide net or viewing it as a wide variety of things that constitute complex federal litigation, it is reasonable to cast a wide net also in terms of the practitioners and the type of survey that you would use for complex federal litigation. That's what happened here in the U.S. attorney matrix. It is not perfect. It is concededly not perfect. But it is sort of the best thing that you could use to update what is very, very old data. You did it in a statistically reliable way. To the extent that, you know, there may be things on the low end that are included. I mean, they make a point of like someone doing a will in West Virginia. There's only one county in West Virginia, Jefferson County. It's out in Harpers Ferry that's included in this metropolitan area. To the extent someone doing a will in that county is included, there are also high end rates there. The idea is that it is a reasonable proxy. High end rates in Harpers Ferry? No, I'm talking about high end rates in D.C. In other words, it's a mix. It's an average. And it is not, perhaps, perfect. But it is a reasonable proxy for what constitutes complex federal litigation. And part of the problem is that what constitutes complex federal litigation is not at all clear. So you do cast a wide net. And the alternatives are this Ublonski Declaration, which doesn't say anything about complex federal litigation. Just sort of, you know, reverts back to Laffey rates. We recognize that it has, you know, in some ways been accepted in Salazar under an abusive discretion standard. However, it was not an abusive discretion for Judge Lambert to accept the updated version, the U.S. attorney matrix. It is not an abusive discretion for the eight district courts recited in the Lewis case to have accepted that new standard. It is better in various ways that my colleague went through. It has the recent data. It has more precise stratification of, you know, the experience levels. And it's more reliable because it's actually a statistical survey. It has the parameters set out. It has the design. You say we're in danger of making the perfect the enemy of the mediocre. Would that be? Yes, Your Honor. I hesitate to use the perfect as the enemy of the good. But, yes, that's precisely what the essence of our argument is. And it's all based on an abusive discretion standard here. It all reverts back to an abusive discretion standard. Mr. Scarborough.  Who ordered this custom survey? I'm not entirely sure. I think it came. I'm not sure. And what were the parameters of the custom survey? They're set forth in, again, Dr. Mallowane goes through. She didn't order it. No, she didn't order it. She worked with it after it was done. Again, she used numbers and she did a cross-check. So why did the U.S. attorney's office order a custom survey rather than a survey directed to the district court? I'm not sure, Your Honor. As I stand here today, I do not know. You don't know how many Wills cases in Ashburn or Centerville or Manassas or Waldorf. You don't know how many of those rates are included in this survey. No, Your Honor. Well, if we don't know any of that kind of information, I don't see it can be statistically correct for the wrong data set. If we don't know what the data set is, then I don't see how a judge can rely on it at all, without it being an abuse of discretion to rely on it. I think in comparison to the other matrices, it's easy to shoot at, in part because it's recent. I don't have a great answer. Well, it's just a big black box that may well be completely irrelevant. Let me just say for the future, it would be helpful if the U.S. attorney's office would create an actual matrix. If it has whatever amount of money it costs, and again, I'm dubious that this is a particularly expensive proposition, to get ALM to run a custom matrix, then it ought to be able to run the kind of custom matrix that would apply in this case. Certainly the government would object if the top billing rates at Arnold and Porter for complex IDEA litigation were used in a simple, individual IDEA case where a single plaintiff wins about that plaintiff's trial. You would object to that, wouldn't you?  Of course. So I beg both sides here, whatever the result in this case is to come up with a matrix. It does not have to be perfect, but it has to have the right data in it. Could I ask a question? Sure. No, I'm done. You're done? Did you want to say something? Well, I just wanted to respond to that, that I think that this court has said essentially that, that matrices are good in Save Our Cumberland Mountains and in Lafayette itself, that they provide a foundation for the parties to agree upon rates. There are so many things you can fight about in attorney fee cases, but you want to try to take at least rates out of the equations, and that's why I started with the growing consensus that the new USAO matrix is better than the alternatives that we've had before. There is a growing consensus developing in the district court that would be disrupted were this court to say that Judge Lambert said- Well, you could say the same thing about the many years of consensus, that this other matrix is presumptively okay as established by this court. So I don't know whose consensus I weigh more, our court or the district courts, but unless the district courts have an explanation for how many cases come from jurisdictions that we know charge less, there's no reason that the consensus is the way we're going to resolve this question. We actually need a matrix. I understand, Your Honor, and to the extent that it's not spelled out in the ALM survey exactly the number of people and the various rates, I think our view is that because it's more recent and because it's statistically reliable, it's better, and that because it's a mix of high-end, low-end, lots of different things, it is a reasonable proxy for the rates. Let me just ask you, just assume hypothetically that we disagree with you about that, that we think the new matrix doesn't comply with the statute. Following up on a question the Chief Judge asked, do you have an argument against the proposition that that means that the presumptive LAFI rates control? I don't think that. Why not? The Salazar case, it would be the case that would make the old LAFI LSI rates be the ones. I think that one rests on simply the failure of the other side to put in any evidence. So what do you think we should do if we think the new rates don't meet the standard? Would we remand it for the development of a whole new matrix to apply to this case, or would we just send it back to the district court? What would we do? I think that you could look to the developing consensus in the district courts on this issue. One of the district court opinions you cited, I don't remember which one it was, had all the same problems that this one does. So if you have consensus over a matrix that doesn't meet the statutory requirements, it doesn't help us. That's all we are. Our only job here is to ensure that the rates that are produced are those that comply with the statute. So the consensus doesn't help, particularly since I don't, like Judge Garland, I don't see this growing consensus for the new U.S. attorney rates. Again, my colleague alluded to other evidence in the record here that establishes reasonable rates in addition to the matrix. Obviously, you're asking me to assume that our primary interest in this case is an affirmance of the U.S. attorney matrix. No, no, no. I'm asking you to help us figure out how to resolve the case if we don't agree with you. What would the government like us to do? If we don't think this meets the statutory standard, what do you want us to do? I'm suggesting that you can look at the other evidence that the district submitted in support of the rates that are comparable to the U.S. attorney matrix. It's hard for me to answer that because we, of course, think that it was not an abuse of discretion. Okay. Thank you. I assume there's no time left. We'll give you one minute. If you could answer during that one minute, there are arguments about the market data on each side. The market data that we offered was primarily the affidavits and declarations from practitioners that said their rates were comparable to or above the LSI Laffey matrix and ones that also attested that the LSI Laffey matrix is at or below the market rates. And the evidence on their side? The district offered affidavits from two practitioners. Neither of those practitioners said that the new U.S. attorney's ALM matrix reflected the rates for complex federal litigation in D.C., nor did they say that the LSI Laffey matrix exceeds the rates. What about the settlements that they were referring to in the fee application? Settlements are a difficult kind of thing to deal with because they always involve compromise where litigants don't want to proceed to litigate things. But the cases they pointed to were institutional reform cases, and they were awarded fees based on the U.S. attorney's old Laffey matrix. That matrix was built on rates for complex federal litigation, just as the LSI Laffey matrix is built on rates for complex federal litigation. That's where we should come out. In Salazar, the court said... Wait, we should sit with the older U.S. attorney? No. Don't give me another matrix. We should come out with the LSI Laffey matrix because it has been found to satisfy the presumption, and it has been found to be a better reflection of the marketplace because... Then what? Then the old USAO Laffey matrix, which was updated using an inflation adjuster that was not reflective of the market. Do we have a case that says that? The Salazar case. That rejects the U.S. attorney? No. It reflects, it rejects, it accepts the LSI Laffey matrix over the USAO Laffey matrix, which was presumably why the government here tried to come up with a new matrix. So you've done this work. Is it now possible to survey Washington lawyers and law firms to find out what their rates are in complex litigation? It is very difficult to get lawyers to do affidavits. I don't know whether or not they would respond to a survey and provide their rates, but it's worthwhile. How expensive is it to buy it from ALM? Apparently the government was able to buy it from ALM, although with a restricted universe. ALM, based on what was reported in the U.S. attorney's ALM matrix, there's a footnote there that directed the reader to the 2010 and 2011 ALM survey and said it was available for purchase. We went to the library to see if we could get it rather than purchasing it because they wanted so much money for those surveys. We ended up having to buy the 2011 because we couldn't get it through a library. I don't remember the exact amount that it cost, but I believe in the government's brief it said it was $1,700. Can I just ask, I'm not asking you actually how much you're getting paid for these briefs on appeal here, but it's got to be more than $1,700. I hope it is. So it seems like a reasonable investment. And it may be, Your Honor. This is just an advisory opinion. There is no way. We have offered, though, the Valeo data, which hasn't been discussed at all today. We have that. And that data definitely supports the LSI LATHE matrix and shows that the ALM matrix is considerably below market rates. In sum, we would ask this Court to reverse the district court because plaintiffs met their burden of proof. The district did not meet its burden of proof and just send it back for recalculation of the rates based on the LSI LATHE matrix. All right. I take the matter under submission. Very interesting day. Thank you. Thank you. Stand, please.
judges: Garland, Tatel, Sentelle